IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JESSE CHILSON,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV101 |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **RETALIX USA, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion to Stay Proceedings Pending Arbitration (Filing No. 16). The plaintiff filed an Opposition To Defendants' Motion to Stay Proceedings Pending Arbitration and Request For Evidentiary Hearing (Filing No. 18). The plaintiff filed an affidavit in support of his motion (Filing No. 18-2). On September 26, 2007, the defendants filed a Motion for Leave to File a Reply Brief and a reply brief (Filing No. 23) in response to the plaintiff's opposition to the defendants' motion. On September 26, 2007, the plaintiff filed a Motion for Leave to File Supplemental Brief and a supplemental brief (Filing No. 25). On September 27, 2007, the plaintiff filed Plaintiff's Evidence Index Opposing Defendant's Motion To Stay Proceedings Pending Arbitration (Filing No. 27). On September 27, 2007, the defendants filed an Evidence Index (Filing No. 28) in support of their motion. The court held an evidentiary hearing September 27, 2007. Mr. Jim Brown, the Human Resources Director for Retalix, and Mr. Chilson testified at this hearing. The court received into evidence the plaintiff's letter from Jim Brown (Exhibit 1); the defendants' mutual agreement to arbitrate claims (Exhibit 101); the defendants' letter from Jim Brown (Exhibit 102); the defendants' email from Jim Brown (Exhibit 103); and the defendants' email from Teresa Small (Exhibit 104).

## BACKGROUND

On April 1, 2005, the plaintiff was informed the company he currently worked for, Integrated Distribution Solutions (IDS), had been sold to Retalix. **See** Filing No. 18-2, Affidavit Of Plaintiff Opposing Defendants' Motion To Stay Pending Arbitration. Jim Brown, the Human Resources Director for Retalix, presented the plaintiff with an "employee

document package" at the same meeting he learned IDS was sold to Retalix. *Id*. This package included a document entitled "Mutual Agreement to Arbitrate Claims." *Id*. The plaintiff was told the documents contained within the "employee document package" were to be signed by the next day, or he would not have a job. *Id*. On April 1, 2005, the plaintiff signed the "Mutual Agreement to Arbitrate Claims." **See** Filing No. 16. The defendants did not sign this document. *Id*.

The plaintiff contends the events leading up to the plaintiff's signature of the arbitration agreement show that the arbitration agreement is unconscionable under state law and should not be enforced. **See** Filing No. 18. The plaintiff also contends the lack of signature from the defendants indicates the defendants had not accepted the offer to arbitrate prior to commencement of this case, and thus, does not create a binding agreement to arbitrate under state law. *Id*.

The defendants claim the arbitration agreement is valid because the defendants gave all employees from April 1, 2005 until April 5, 2005, to return the arbitration agreement, that Mr. Brown asked all employees if they had questions concerning the new hire documents, that the plaintiff signed and acknowledged he understood the document, and that important terms of the arbitration agreement were not hidden. **See** Filing No. 23 p. 4-5. The defendants further contend, the plaintiff's signature is not required to enforce the arbitration agreement because the plaintiff assented to the arbitration agreement by signing it, returning the it to the defendants, and continued to work for the defendants after signing it. **See** Filing No. 23 p. 5. Finally, the defendants argue an employer's request for an at-will employee to sign the arbitration agreement as a condition of employment is not unconscionable and an employer's signature is not required to enforce an arbitration agreement when both the employee and the employer assent. **See** Filing No, 23 p.6-8.

## ANALYSIS

If a dispute falls within a valid and enforceable arbitration agreement, the Federal Arbitration Act (FAA) instructs that the court in which the dispute is pending, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Courts determine the

2

validity of an arbitration agreement by looking to state contract law. ***Faber v. Mendard, Inc.,*** 367 F. 3d 1048, 1052 (8th Cir. 2004). Under Nebraska law, "the term 'unconscionable' means manifestly unfair or inequitable." ***Myers v. Neb. Inv. Council***, 272 Neb. 669, 724 N.W.2d 776, 799 (Neb.2006).

> An unconscionable agreement is "[a]n agreement that no promisor with any sense, and not under a delusion, would make, and that no honest and fair promisee would accept." BLACK'S LAW DICTIONARY 75 (8th ed. 2004). Nebraska law defines "unconscionable" as manifestly unfair or inequitable. ***EEOC v. Woodmen of the World Life Ins. Soc'y***, 479 F.3d at 566 (8th Cir.2007); ***Myers v. Neb. Inv. Council***, 272 Neb. 669, 724 N.W.2d 776, 799 (2006). Nebraska courts evaluate both substantive and procedural unconscionability. A contract is substantively unconscionable if the terms are grossly unfair under the circumstances in existence at the time the parties entered the contract. ***Woodmen of the World***, at 566. Procedural unconscionability considers "the disparity in respective bargaining positions of parties to a contract." ***Id.*** (**quoting** ***Myers***, 724 N.W.2d at 799 (internal quotations omitted)). "Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." ***Parizek v. Roncalli Catholic High Sch.***, 11 Neb.App. 482, 655 N.W.2d 404, 408 (2002)

***Hollins v. Debt Relief of America***, 479 F. Supp. 2d 1009, 1006 (D. Neb. 2007). In situations where fewer than all of the proposed parties execute a document, the intent of the parties as determined by the language of the contract is examined to determine who may be liable under the agreement. ***Vowers & Sons, Inc. v. Strasheim***, 248 Neb. 699, 538 N.W.2d 756 (1995). Furthermore, "adhesion contracts are not automatically unconscionable or void" under Nebraska law. ***Kosmicki v. Nebraska***, 264 Neb. 887, 652 N.W.2d 883, 893 (Neb.2002); **see also** ***Faber***, 367 F.3d at 1053 (holding that "inequality in bargaining power . . . is not enough by itself to overcome the federal policy favoring arbitration," **citing** ***Gilmer v. Interstate Johnson/Lane Corp.***, 500 U.S. 20, 33 (1991)). Furthermore,

> [A]n adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a "take this or nothing basis," the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. **Robin v. Blue Cross Hospital Service, Inc.**, 637 S.W.2d 695, 697 (Mo. banc 1982). Some writers view any pre-printed standardized form with filled-in blank spaces to be a contract of adhesion insofar as the pre-printed provisions are concerned. Thus, in *Corbin On Contracts*, § 559A at 660 (Supp.1989), it is said "the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts. . . ." **See also Estrin Construction Co., Inc. v. Aetna Casualty and Surety Co.**, 612 S.W.2d 413, 418, n. 3 (Mo. App.1981). Such form contracts are a natural concomitant of our mass production-mass consumer society. *Id*. Therefore, a rule automatically invalidating adhesion contracts would be completely unworkable. *Corbin*, supra § 559A at 660. Accordingly, courts do not view adhesion contracts as inherently sinister and automatically unenforceable.

**Hartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.**, 770 S.W.2d 525, 527 (Mo.App. E.D.1989).

The court finds the "Mutual Agreement to Arbitrate Claims" is an adhesion contract. However, the court does not find the terms of the adhesion contract limit the defendants' obligations. Additionally, the manner in which the parties entered into the contract is not unconscionable. The evidence before the court is that the plaintiff was given from April 1, 2005 to April 5, 2005, to return the arbitration agreement (Exhibit 103). The plaintiff said he did not question signing the arbitration agreement, and when he is told to sign something he signs it. **See** Filing No. 32, Audio File at 42:45. The court finds that the plaintiff would have signed the agreement even if he had until April 5, 2005 to sign the arbitration agreement. Thus, the plaintiff had reasonable time to understand the terms of the contract, but chose to sign and turn in the arbitration agreement on April 1, 2005.

Furthermore, the arbitration agreement should not be invalid *per se* due to lack of the defendant's signature. Nebraska law requires only that the arbitration agreement be in writing, not that it be in writing and signed. **See** NEB. REV. STAT. § 25-2602.01 (a). Additionally,

4

> [i]n the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

*Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). Upon consideration,

**IT IS ORDERED:**

The defendants' Motion to Stay Proceedings Pending Arbitration (Filing No. 16) is granted as follows:

1.  All claims are stayed pending binding arbitration in accordance with the Federal Arbitration Act and under the parties' Mutual Agreement to Arbitrate Claims set forth above.

2.  The parties shall electronically file written status reports concerning the progress of the arbitration proceedings. The first status report shall be filed by **March 5, 2008.** Subsequent status reports are due **every 90 days thereafter** until all arbitration proceedings are completed.

**ADMONITION**

Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly

erroneous or contrary to law.[1]  The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.  See NECivR 72.2(d).

DATED this 2nd day of October, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

[1] The standard of review is governed by whether the matter is "dispositive" or "non-dispositive."  **See** 28 U.S.C. § 636(b).  The court can find no binding authority as to whether a motion to compel arbitration is comparable to the dispositive matters designated in § 636(b)(1)(A), and there is a split of authority on the issue.

*Non-Dispositive*.  In *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141 (W.D.N.Y. 1997), the court decided that, because the parties must return to the district court to have an arbitration award confirmed, modified or vacated under 9 U.S.C. §§ 9-11, the court retains jurisdiction even during arbitration.  Accordingly, an order to stay proceedings and compel arbitration was non-dispositive.  *Herko*, 978 F. Supp. at 142 n.1.  **Accord** *All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp. 2d 825 (D. Minn. 1999); *SDD99, Inc. v. ASA Int'l, Ltd.,* Case No. 06-CV-6089, 2007 WL 952046 (W.D.N.Y., March 29, 2007); *Jackman v. Jackman*, Case No. 06-1329, 2006 WL 3792109 (D. Kan., Dec. 21, 2006).  **See also** *Taylor v. Ash Grove Cement Co.*, Case No. CV03-1509, 2004 WL 1418783 (D. Or., June 22, 2004) (**citing** *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 865 (D. Or. 2002)).

*Dispositive*.  In *Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819 (E.D. Mich. 2005), the district court reasoned that a magistrate judge's order compelling arbitration terminated the litigation in district court and transferred the case to another forum; therefore, the court viewed such an order as the functional equivalent of a dispositive matter, which was reviewable *de novo* pursuant to 28 U.S.C. §636(b)(1)(B).  In *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, Case No. C-06-5255, 2006 WL 3949332 at *1 n.1 (N.D. Cal.), the magistrate judge noted the split in authority and "in an abundance of caution" elected to issue a report and recommendation on a motion to compel arbitration.

The court is inclined to agree with the cases following *Herko*; however, if the district court determines that the Motion to Compel Arbitration is a dispositive matter, then my decision on that point will be reviewable *de novo* pursuant to NECivR 72.3.